FLORIDA EAST COAST RAILWAY COMPANY, A CORPORATION, *Plaintiff in Error*, v. THOMAS J. PETERS, *Defendant in Error*.

Opinion Filed April 17, 1919.

Petition for Rehearing Denied May 22, 1919.

1   A trial judge may amend an order made under the statute extending the time for making and presenting a motion for new trial, so as to make the order express the judicial intent to comply with the statute.

2.   Only such damages may be recovered as were contemplated or might reasonably be supposed to have entered into the contemplation of the parties to a contract of carriage. If the owner of the goods would charge the carrier with any special damages, he must have communicated to the carrier all the facts and circumstances of the case which do not ordinarily  attend the carriage or the particular character and value of the property carried, for otherwise such peculiar circumstances cannot be contemplated by the carrier.

3. In an action to recover damages for loss of tomatoes because of delay in transporting crates to be used in marketing the tomatoes, the plaintiff should show (1) that the defendant was negligent in delaying the transportation and delivery of the crates; (2) that the plaintiff actually sustained a property loss as a proximate result of the defendant's negligence; (3) that the various elements of loss were such that, from the information imparted to the defendant or from common knowledge properly imputed to the defendant, they should reasonably have been regarded as naturally and ordinarily to result proximately from the negligence, or such as may reasonably under the circumstances stated he supposed to have been contemplated at the time by the parties as a probable proximate result of the negligence; (4) that the losses alleged are not remote, contingent or conjectural, and are capable of reasonably certain ascertainment.

4. One who commits a trespass or other wrongful act is in general liable in damages for all the consequences directly resulting from the tort, whether foreseen by the wrongdoer or not, if the wrongful act is not interrupted by the intervention of an independent procuring or efficient cause, without which intervening cause the injury or loss would not have ensued and the plaintiff is not at fault. But in actions for damages alleged to have been caused by the mere negligence of one engaged in performing a public service as to which the law may imply a contract or impose a duty, the damages for which recovery may be had are such as naturally and ordinarily arise out of or flow from the negligence, or such as may reasonably be supposed to have been contemplated at the time of the negligence as a probable result of it.

5. If a party charged with negligence, by giving proper attention to the subject under the circumstances of the particular case, should reasonably have contemplated the injury or loss alleged as being likely to occur as a proximate result of the negligence, the law holds the negligent party in damages whether such injury or loss was actually contemplated or not.

6.  In negligence actions special damages cannot be recovered where the defendant had no notice, actual or constructive, that such damages should have been contemplated as a proximate result of the negligence alleged.

7   In an action for damages for tomatoes lost in packing houses and fields because of negligence in delaying the transportation of crates, the measure of damages is the value of the tomatoes at the time and place they were in fact lost.

8.  Where the damages recoverable in an action for negligence are not clearly and fully shown so as to be ascertained with reasonable certainty, a judgment on a verdict apparently in excess of the damages properly recoverable will be reversed for a new trial.

A Writ of Error to the Circuit Court for Dade County, H. Pierre Branning Judge.

Judgment reversed.

*Shutts, Smith & Bowen* and *Armstead Brown*, for Plaintiff in Error.

*Carson & Pine* and *H. F. Atkinson*, for Defendant in Error·

WHITFIELD, J.—Peters brought an action against the railroad company to recover special damages alleged to have accrued to the plaintiff by reason of the failure of the defendant company to transport and deliver, within a reasonable time from their receipt by the carrier, large quantities of crate material designed to be used in crating tomatoes to be shipped to market.. A judgment for the plaintiff was reversed. Florida East Coast R. Co.

v. Peters, 72 Fla. 311, 73 South. Rep. 151. Another trial was had on a second amended declaration containing many counts, one of which being typical, is as follows:

"11. And the plaintiff by his attorneys sues the defendant in this the eleventh count of his second amended declaration, for that whereas, the defendant was from to-wit November 1st, 1910, until this date, and at all intervening times, and is now a common carrier of goods for hire, operating a line of railroad from to-wit Knights Key, Monroe County, Florida, to to-wit Jacksonville, Duval County, Florida, and the plaintiff was at the times above set forth, a farmer residing near Peters Station, a station on the main line of the defendant's railroad in Dade County, Florida, and was then and there engaged in the business of growing early vegetables for market. And in the course of said business during the vegetable season beginning about November 1st, 1910, and ending about May 3rd, 1911, plaintiff had planted and cultivated in tomatoes a large number to-wit about four hundred (400) acres of land near said Peters Station of which the defendant had notice; that in anticipation of a large crop of tomatoes which was indicated and expected and of which the defendant had notice, the plaintiff contracted with the Cummer Lumber Company a corporation doing business in Jacksonville, Florida, by and through its duly authorized agent, to-wit the Drake Produce Company of Miami, Florida, to supply the plaintiff with carrier crates to be shipped on order of plaintiff, which said crates were to be especially prepared for the plaintiff by the said Cummer Lumber Company aforesaid with the name, brand and address of the plaintiff stamped on each end of the said carrer crates, and which were to be furnished and shipped as directed by the plaintiff; that in accordance with the said agreement the plaintiff purchased from the said

Cummer Lumber Company, to-wit, seventy-five thousand (75,000) carrier crates for tomatoes specially prepared as aforesaid, to be shipped by the said Cummer Lumber Company from Jacksonville, Florida, to the plaintiff at Peters Station, Florida, aforesaid, in accordance with shipping directions of the plaintiff that the plaintiff had on hand enough carrier crates in which to pack and ship early shipments of tomatoes, which might become ripe and ready for shipment before the carrier crates ordered from the said Cummer Lumber Company should arrive, if transported by the defendant with reasonable speed and diligence; that said carrier crates were loaded in certain cars for shipment, twenty-five hundred (2,500) of the said carrier crates being loaded in each car; that the defendant had knowledge that when tomatoes become ripe and ready for packing and shipping, that they must be packed and shipped immediately in order to prevent them from becoming over-ripe and thus reaching the market in a deteriorated and unmarketable condition; that defendant had notice that the plaintiff would during the busy season require a large number of carrier crates, to-wit, five or six thousand of the same each day in which to pack such tomatoes as had ripened and were ready for shipment on that day; that defendant had notice that such carrier crates as were offered to it for transportation consigned to the plaintiff were to be used for the purpose of packing and shipping the tomatoes grown on plaintiff's farm near Peters Station aforesaid; and the defendant had notice that a failure to deliver them promptly would result in the loss of a large number of tomatoes; that on to-wit, the sixteenth day of March, 1911, the Cummer Lumber Company aforesaid at Jacksonville, Florida, delivered to the defendant to-wit, twenty-five hundred (2,500) carrier crates, consigned to the

plaintiff at Peters Siding, Florida, and the defendant then and there being a common carrier of goods for hire, it became and was its duty to carry and transport said car containing said crates to the plaintiff at Peters Siding, Florida, with reasonable speed and diligence, and the defendant then and there promised and agreed to transport said goods over its said line by the shortest and most available route and deliver the same to the plaintiff at the point of destination with reasonable speed and diligence that the defendant had notice of the facts as aforesaid, that all conditions precedent necessary to be performed by the plaintiff had been performed.

"Yet the defendant notwithstanding the premises failed and neglected to transport the said goods with reasonable speed and dispatch, but on the contrary thereof did greatly delay the transportation and delivery of the same over its said line so that by reason of said great delay in the transportation and negligence of the defendant the said twenty-five hundred (2,500) carrier crates did not arrive at their destination and were not delivered to the plaintiff until to-wit, March thirtieth, 1911; that in the mean time, the plaintiff had exhausted the supply of carrier crates on hand, which would have been sufficient to last until the said twenty-five hundred (2,500) crates had arrived, if the same had been transported with reasonable speed, diligence and dispatch; and by reason of the fact that the said carrier crates on hand had become exhausted, and by raeson of the facts that the said twenty-five hundred (2,500) carrier crates did not arrive within a reasonable time after delivery to the defendant, the plaintiff was unable to pick, pack and ship the tomatoes grown as aforesaid as the same ripened and became ready for shipment; and by reason of the facts aforesaid sufficient tomatoes

to fill to-wit, twenty-five hundred (2,500) carrier crates, became too ripe for shipment, so that the plaintiff was forced to allow them to become overripe and rot in his field; that the said tomatoes would have been, if properly packed and shipped with reasonable diligence of a net value to the plaintiff of to-wit One Dollar and thirty-five cents ($1.35) per crate, but by reason of the negligence of the defendant, the said tomatoes were allowed to rot and spoil in the field of the plaintiff and were a total loss to the plaintiff."

The thirty-first count contains the following: "Plaintiff further says that tomato plants or vines are of such a nature that if the tomatoes which become ripe thereon, and ready to be picked and shipped are not at once upon their becoming ripe picked from the vines that the vitality and productiveness of the vine is thereby affected so that the productiveness of such plants is materially decreased, not only in the number of the tomatoes produced and the time that such plants will keep on bearing or producing tomatoes, but that the size and quality of the fruit produced will be greatly depreciated, that the defendant had notice of the facts, circumstances and conditions as aforesaid.

"That by reason of the delay aforesaid and by reason of the negligence and carelessness of the defendant aforesaid, on or about the fifteenth day of March, A. D. 1911, plaintiff's supply of carrier crates, including the crates on hand before the season commenced and also the several carloads of crates which had been delivered before that time, had become exhausted, that thereafter from about to-wit the fifteenth day of March, 1911, until to-wit the thirteenth day of March, 1911, the defendant delivered to the plaintiff only to-wit, four carloads of carrier

crates, aggregating in all to-wit, ten thousand (10,000) carrier crates; that no two of said cars were delivered to the plaintiff on the same day; that the carrier crates contained in one carload, consisting of about twenty-five hundred (2,500) crates were sufficient to keep the force of men and teams assembled by the plaintiff at work preparing said tomatoes for shipment for about four hours for each carload; that during said long space of time, to-wit, from March 15, 1911, until to-wit, March thirteenth, 1911, the plaintiff and the force of men and teams assembled by him were forced to remain idle except for about four hours a day on four different days; that during said time a large number of tomatoes, to-wit, enough to fill about seventy-three thousand (73,000) crates, became over-ripe and rotted in the field of the plaintiff, because the plaintiff had no carrier crates in which to pack and ship the same; that because of the fact that the plaintiff had no carrier crates in which to pack and ship tomatoes, the plaintiff was not able during said period of time, from to-wit, March fifteenth until to-wit, March thirtieth, 1911, to keep the force of men and teams assembled by him busy; that a large number of said teams were hired by the day, and that a large number of men assembled were doing piece work, that were paid so much for each crate picked or packed, and were not receiving so much per day wages; that by reason of the fact that such men and teams could not be kept busy, a large number of said teams were withdrawn and a large number of said men left the employment of the plaintiff; that the defendant had notice that such disorganization of the force of men and teams thus assembled was likely to occur if crate material was not promptly delivered by it to the plaintiff, that by reason of said disorganization and loss of the services of men and teams as aforesaid, when

a sufficient number of crates were finally delivered to the plaintiff on, to-wit, March thirtieth, 1911, in which to pack and ship all tomatoes that should thereafter become ripe, the plaintiff's force had become so disorganized that the plaintiff was not able to pack and ship all the tomatoes thus becoming ripe, and that thereby to-wit thirteen thousand (13,000) crates of tomatoes became over-ripe and unfit for shipment and spoiled in the field of the plaintiff; that by reason of the fact that the plaintiff was unable to pick from the fields such tomatoes as became ripe and ready for shipment after to-wit, March 15, 1911, a large number of the plants of the plaintiff became affected and in whole or in part quit bearing, and that a large number of the plants of the plaintiff withered up and died by reason thereof; that by reason of the fact that the tomato vines of the plaintiff had become affected as aforesaid, plaintiff's crop of tomatoes produced on said vines as aforesaid was decreased to the extent of to-wit, seven thousand (7,000) crates of tomatoes, which the same would otherwise have produced.

"That by reason of the fact that the force of men assembled by the plaintiff became idle after to-wit, March fifteenth, 1911, due to the negligence and carelessness of the defendant as aforesaid, a large number of said men threatened to leave the employment of the plaintiff and seek employment elsewhere; that in order to keep said force of men together and be in readiness to pick and pack tomatoes as soon as carrier crates should be delivered by the defendant, the plaintiff offered to and did furnish board to a large number of said men at his, the plaintiff's, expense in an endeavor to keep said force of men together as aforesaid, and the plaintiff thereby spent a large sum of money, to-wit, Nine hundred and ninety-eight dollars and fifty cents ($998.50).

"And the plaintiff says that by reason of the negligence and carelessness of the defendant in the premises as aforesaid the plaintiff lost a large sum of money, to-wit, Nine hundred and ninety-eight dollars and fifty cents ($998.50), expended for board for men as aforesaid, and lost to-wit, Ninety-three thousand (93,000) crates of tomatoes as aforesaid, and that each crate of said tomatoes lost was of the net value to the plaintiff of to-wit One Dollar and thirty-five cents ($1.35)."

The pleas at the last trial being:

"1.    That it is not guilty as alleged in plaintiff's declaration and each count thereof."

"8.    And for an eighth plea, the defendant says that, at the beginning of the shipping season the plaintiff had on hand and ready for immediate use approximately forty-five hundred (4,500) crates available for packing and shipping tomatoes, and that from the beginning of the shipping season up to March 23, 1911, the defendant delivered to the plaintiff certain cars of crate material, and that on no date during said period did the plaintiff exhaust his supply of crate material, nor did he ship to the full amount of his supply on hand at any period up to March 23rd; and that thereafter, on March 30, 1911, the plaintiff again received large quantities of crate material, which supply exceeded at all times any amount shipped on any date thereafter; and if the plaintiff suffered any damage by reason of delay in delivery of crate material, or if there was any duty upon the defendant to deliver said crate material, the only loss incurred by the plaintiff was the market price of said tomatoes during the period of, to-wit, March 23, 1911, to March 29th, 1911, both inclusive, and that the plaintiff's damage, if any, would not exceed for that period the amount of cars

ordered out by him through the Drake Produce Company, to be delivered between the days of such period."

Verdict and judgment were rendered for the plaintiff, and the defendant took writ of error.

The assignments of error are confined to the bill of exceptions, but the cover matters other than the sufficiency of the evidence to sustain the verdict, therefore a motion for a new trial was not essential to a consideration of the asserted errors duly presented and assigned that do no go to the sufficiency of the evidence to support the verdict and judgment.  Manatee County State Bank v. Wade, 56 Fla. 492, 47 South. Rep. 927; Ruff v. Georgia, S. &. F. R. Co., 67 Fla. 224, 64 South. Rep. 782.

Motions made here to strike the motion for a new trial and all the motions in relation thereto, and to strike the assignments of error, were continued to the final hearing. The ground of the motion are that the motion for a new trial was not made within four days from the rendition of the verdict, and that no valid order was made by the court within said four days for extending the time for filing the motion for new trial; that a *nunc pro tunc* order in the premises is ineffectual, since it attempts to correct an error in making an order, and not to make the order speak the truth, and that he assignmens of error are based on the motion for new trial, and fail with such motion.

The verdict was rendered January 30, 1917.  On February 2, 1917,counsel for defendant presented a motion for an order extending the time for making and presenting a motion for a new trial.  An order was made on February 2nd, extending the time to February 15, 1917. On February 7, 1917, counsel for plaintiff moved to va-

cate the order extending the time for filing the motion
for new trial on the ground that the time was extended
more than fifteen days from the rendition of the verdict
in violation of the statute. The court having on Febru-
ary 14th, granted a motion to amend and made an order
amending *nunc pro tunc* the order extending the time
to February 15th, limiting the time to February 14th, the
motion to vacate the order extending the time to Febru-
ary 15th, was denied on Febraury 14th, 1917. The stat-
ute provides that "Motions for new trials in civil cases
shall be made within four days after the rendition of the
verdict and during the same term, but the judge upon
cause shown may within such four days and during the
same term by order extend the time for the making and
presentation of such motions, not to exceed fifteen days
from the rendition of the verdict. In all cases of exten-
sion of the time for making such motions, a copy of the
motion to be presented to the judge shall be served on the
opposite party, or his attorney with three days notice of
the time and place that the same will be presented and
heard.

"It shall not be necessary to incorporate in any motion
for a new trial any matter in pais previously excepted
to, for the purpose of having the same reviewed by an
appellate court." Sec. 1, Chapter 5403, Acts of 1905, Sec.
1608a Florida Compiled Laws, 1914.

In the order amending *nunc pro tunc* the order entered
on February 2, 1917, extending the time for filing the mo-
tion for new trial, the court states, "that it was the in-
irtention of the court to extend the time for filing of mo-
tion for new trial to the limit allowed by law." This be-
ing so, and the time limit under the statute being Febru-
ary 14, 1917, the order amending the original order so as

to make it read February 14th was proper to give effect to the judicial intent erroneously expressed. As the motion made here to strike the motion for new trial from the record must be and is denied for the reasons above stated, the motion to strike the assignments of error must also be and is denied, even if such assignments did not include matters not set out in the motion for new trial. See Sec. 1. Chapter 5403, Acts of 1905, Sec. 1608a Florida Compiled Laws, 1914.

On the merits of the case many errors are assigned with reference to the admissibility of evidence and to charges given and refused, as well as to the propriety of the order denying a new trial on the motion challenging the correctness of the verdict on the law and the evidence.

Upon the former writ of error it was held that:

"In an action by the consignee against a carrier for the recovery of damages occasioned by the negligent delay of the carrier in the transportation and delivery to the consignee of several shipments of crate material for the use of the consignee in the shipment of his crop of tomatoes, it is incumbent upon the plaintiff to prove by competent evidence the amount of damages which he has suffered as a proximate result of such negligent delay.

"In an action against a carrier for the recovery of damages occasioned by the negligent delay in the transportation of goods, whether brought by the consignor or consignee, only such damages may be recovered as were contemplated or might reasonably be supposed to have entered into the contemplation of the parties to the contract of carriage. In order to charge the carrier with any special damages, it is incumbent upon the plaintiff to show that at the time of the shipment of the goods the carrier

had notice or knowledge of such special facts and circumstances as to require expedition in the transportation of the goods and that special damages would ensue by reason of negligent delay.

"It is doubtless true that common carriers are supposed to take notice of such natural events as are familiar to ordinary people. They will be held to a knowledeg of seedtime and harvest, and of the general customs relating thereto in the territory where they do business. Even so, knowledge by a carrier of the fact that a shipper on its line has about 400 acres planted in tomatoes would not carry with it the additional knowledge when such tomatoes would ge ready for the shipment thereof to begin or when the shipper would need crates, the number thereof that he would need or that a few days' delay in the transportation thereof would result in special damages to such shipper·

"Where losses and injuries are not necessary or a usual and ordinary but a proximate though unusual result of actionable negligence, such losses and injuries may be compensated for by the recovery of special damages. But the negligent party cannot lawfully be made to respond in damages for losses that do not usually result from or could not ordinarily have been forseen as a proximate result of a particular negligence, unless it be shown that there was knowledge or notice on the part of the negligent person that such losses would or might follow as a proximate result or a particular negligence.

"In an action by a consignee against a carrier for the recovery of damages occasioned by negligent delay in the transportation of crate material, unless the carrier had ar or before the receipt of the crates for transportation knowledge or notice of the particular special damages that

would result from unreasonable delay in the transportation, such special damages are not recoverable. And if several elements of unusual or special damages would proximately result from the negligence, there must have been notice or knowledge as to each such elements of damages as a probable result of the stated negligence before liability for such special damages arises in law." Florida East Coast Ry. Co. v. Peters, 72 Fla. 311, 73 South. Rep. 151.

Before liability in damages for a negligent act or omission can arise, it is necessary that a casual relation, such as the law recognizes as being sufficient, should exist between the damage complained of and the act alleged to have occasioned the damage. If such a relation does not exist, the damage is said to be remote and cannot be recovered. If such a relation does exist, then the damage is said to be a proximate result of the wrongful act to which it is attributed, and conversely the wrongful act is said to be the proximate cause of the damage.

Only such damages may be recovered as were contemplated or might reasonably be supposed to have entered into the contemplation of the parties to the contract of carriage. If the owner of the goods would charge the carrier with any special damages, he must have communicated to the carrier all the facts and circumstances of the case which do not ordinarily attend the carriage or the particular character and value of the property carried, for otherwise such peculiar circumstances cannot be contemplated by the carrier. Williams v. Atlantic Coast Line R. Co., 56 Fla. 735, 48 South. Rep. 209, 24 L. R. A. (N. S.) 134.

The important questions to be decided are the special damages for which the defendant may be liable on the record, and the measure of the damages sustained.

In order to recover damages the plaintiff should show (1) that the defendant was negligent in delaying the transportation and delivery of the crates; (2) that the plaintiff actually sustained a property loss as a proximate result of the defendant's negligence; (3) that the various elements of loss were such that, from the information imparted to the defendant or from common knowledge properly imputed to the defendant, they should reasonably have been regarded as naturally and ordinarily to result proximately from the negligence, or such as may reasonably under the circumstances stated be supposed to have been contemplated at the time by the parties as a probable proximate result of the negligence; (4) that the losses alleged are not remote, contingent or conjectural, and are capable of reasonably certain ascertainment.

One who commits a trespass or other wrongful act is in general liable in damages for all the consequences directly resulting from the tort, whether forseen by the wrongdoer or not, if the wrongful act is not interrupted by the intervention of an independent procuring or efficient cause, without which intervening cause the injury of loss would not have ensued and the plaintiff is not at fault. But in action for damages alleged to have been caused by the mere negligence of one engaged in performing a public service as to which the law may imply a contract or impose a duty, the damages for which recovery may be had are such as naturally and ordinarily arise out of or flow from the negligence, or such as may reasonably be supposed to have been contemplated at the

time of the negligence as a probable result of it.    Hall v. W. U. Tel. Co., 59 Fla. 275, 51 South. Rep. 819.    If the party charged with negligence, by giving proper attention to the subject under the circumstances of the particular case, should reasonably have contemplated the injury or loss alleged as being likely to occur as a proximate result of the negligence, the law holds the negligent party in damages whether such injury or loss was actually contemplated or not.    McMillan v. Western Union Tel. Co., 60 Fla. 131, text 146, 53 South. Rep 329.

The special damages claimed as a proximate result of the delay in transporting crates, are for stated large numbers of crates of tomatoes "that the plaintiff was forced to allow to become over-ripe and rot in his field;" for a stated large number of crates of tomatoes that would have been produced on the same vines if the ripe tomatoes had been picked from the vines for shipment; for a stated number of (crate of tomatoes which after the crates were delivered "became over-ripe and unfit for shipment. and spoiled in the field of the plaintiff" because plaintiff's working force was disorganized and lost while the crates were alleged in transit; and for $988.50 expenses caused by idle labor ,&c.

Assuming that the allegations as to the notice to the defendant of the special damages likely to result from the delay in transporting the crates are sufficient, the evidence does not show that the defendant had actual notice as to the special damages claimed from alleged injury to the growing tomato vines because the ripe tomatoes were not promptly picked therefrom, and notice from common knowledge thereof cannot legally be imputed to the defendant carrier even if such special damages are capable of reasonably accurate ascertainment.    Such special

damages appear to be remote or conjectural and not an ordinary result of the alleged negligence that should have been contemplated. Likewise the special damages claimed for a large number of crates of tomatoes lost after the crates were delivered to the plaintiff by reason of disorganized labor forces, since such special damages were not called to the attention of the defendant carrier, and they are not such ordinary results of the alleged negligence of the carrier as it should have anticipated, but such special damages are remote and conjectural.

As to the value of the tomatoes lost it is alleged "that the said tomatoes would have been, if properly packed and shipped with reasonable diligence of a net value to the plaintiff of to-wit, one dolalr and thirty-five cents ($1.35) per crate.

In Seaboard Air Line Ry. v. Roberts, 71 Fla. 28, 70 South. Rep. 773, it was held that where "melons were not in fact tendered to the carrier, the proof should be clear and definite that damages as alleged were in fact, sustained in the actual loss of marketable melons in the field, and that such loss was proximately caused by the defendant's unexcused breach of its contract or duty to furnish cars as alleged."

The proofs here are that nearly all the tomatoes lost were on the growing vines, some being collected in a house; and the question is what is the correct measure of damages? From the notices given by the plaintiff to the defendant, the special damages contemplated appear to have been as to the tomatoes left "in packing house and fields" because of the lack of crates. With this in view and considering the rule of law limiting recovery to damages proximately and not remotely caused by the delay

alleged and to such value as are capable of reasonably certain ascertainment, the proper measure of damage is the value of the tomatoes at the time and place they were in fact lost.   In the absence of an established market value to be shown as a definite fact, opinions of competent witnesses as to the value of tomatoes at the time and place they were lost *as a proximate result of defendant's negligence,* would be permissible as calculated to show with some degree of certainty the values for which the defendant may be liable in damages.   But opinions as to the value of tomatoes if they had been picked and packed in a special manner for final shipment to market would be based not on an existing fact, but upon a supposition more or less remote from the existent facts, and fraught with contingencies.   If an established stable market value exists for a staple product in a marketable condition may be shown as a fact, it can only be used by calculation and deduction as tending to show with all other circumstances pertinent thereto, the value of the product at the time and place it is lost, before it is placed in marketable condition.

Only 45,000 crates were delayed in transit under the pleadings and it may be assumed the verdict has reference thereto.   But shipments of tomatoes were made during the period of the delays presumably in crates that had been delayed during the first of the period.   These shipments should be considered in determining the number of crates of the tomatoes lost as a proximate result of the delay in transporting and delivering the crates.

The verdict awarded the plaintiff. $44,460 with interest from the date of the action.   The verdict is explained in the brief of the counsel for the plaintiff, the defendant in error here, as follows : "According to the testimony * * *

the tomatoes which rotted were ninety-seven per cent. fancy and three per cent. choice." "The market value of these tomatoes was one dollar and thirty cents ($1.30) for fancy tomatoes and ninety cents ($.90) for choice tomatoes." Plaintiff "saved thirty cents ($.30) on each crate by not having to pick, pack and grade them and load them on the cars." "The method of the calculation is perfectly clear. Ninety-seven per cent. of forty-five thousand crates, or forty-two thousand, six hundred and fifty crates, at one dolar and thirty cents (market value per crate, less thirty cents, amount saved to Peters) equals one dollar per crate, or forty-two housand, six hundred fifty dollars; three per cent. (choice) equals one thousand three hundred fifty crates, at ninety cents (market value per crate less thirty cents, amount saved to Peters) equals sixty cents per crate, or eight hundred ten dollars. Forty-two thousand, six hundred fifty dollars ($42,650), plus eight hundred ten dollars ($810), equals forty-four thousand four hundred sixty dollars ($44,460), or the amount of the verdict.

"It will be seen that the jury did not allow to the plaintiff any damages for the disorganization of his crew or the deterioration of his vines, although both were properly allowable under the testimony. The only conclusion which can be reached is that the jury was not certain in its own mind whether thes losses were the proximate result of the defendant's negligence or not."

Assuming that the jury rendered the verdict on the calculation suggested by plaintiff's counsel as quoted above, and that there was an established market value at the place for tomatoes packed and ready for shipment, thre is evidence that picking, packing, &c. cost thirty cents per crate and that when so packed they were worth

stated prices per crate according to grade, which may tend with other facts and circumstances to show the value of the product as lost; but it does not clearly appear from the testimony what was the value of the tomatoes at the time and place they were lost as a proximate result of the negligence of the defendant as alleged, or that the verdict does not include damages for crates of tomatoes lost by reason of non-production and the disorganization of plaintiff's labor force after he had received the crates, for which two items damages are not recoverable as stated above, because their loss was apparently not a proximate result of defendant's negligence that should have been contemplated or anticipated. Plaintiff concedes that the jury were not certain that the expenses incurred because of the plaintiff's disorganized labor forces "were the proximate result of the defendant's negligence." Besides this the shipments of tomatoes made in delayed crates should have been considered in determining the number of crates of tomatoes lost because of the defendant's delay in transporting the crates.

It is apparent that the damages recoverable were not clearly and fully shown so as to be ascertained with reasonable certainty.

Judgment reversed for new trial.

BROWNE, C. J. AND TAYLOR, ELLIS AND WEST, J. J. concur.