FLORIDA EAST COAST RAILWAY COMPANY, *Plaintiff in Error*, v. THOMAS J. PETERS, *Defendant in Error*.

Opinion Filed August 4, 1920.

1. In an action against a common carrier for special damages on account of the loss of tomatoes because of delay in transporting crate material which was to be used in packing the tomatoes for shipment the plaintiff should allege and prove that at the time of the shipment of the crate material the carrier had notice that special damages to the consignee would result from a negligent failure to transport the crate material with reasonable promptness.

2. In an action against a common carrier for special damages resulting to the plaintiff because of the negligent delay in the transportation of carrier crates to be used in shipping tomatoes and such damage consists of the spoiling of tomatoes in the field which became too ripe for shipment, the plaintiff should show that he had made reasonable provision for the shipment of the tomatoes by delivering to the carrier for transportation a sufficient quantity of crate material for use by him at the time when the tomatoes were ready for shipment.

3. A party is bound by the allegations of fact in his own pleading, and when there is no denial of such allegations they are accepted as true if material and that meaning ascribed to the words that is usually intended by the use of such words.

4. An allegation in a declaration for special damages accruing because of the negligent failure to deliver crate material for use in shipping tomatoes which asserts that when the tomatoes become ripe and ready for packing and shipping they must be "packed and shipped immediately" to prevent them from becoming overripe and reaching the market in a deteriorated and unmarketable condition, will be construed to mean that when ripe and ready for packing and shipping they must be packed and shipped without delay.

A Writ of Error to the Circuit Court for Dade County; H. Pierre Branning, Judge.

Judgment affirmed if remittitur entered.

*Brown, Twyman & Scott, Shutts & Bowen* and *Scott M. Loftin,* for Plaintiff in Error;

*James M. Carson,* for Defendant in Error.

ELLIS, J.—Action was begun in the Circuit Court for Dade County by the defendant in error against the Florida East Coast Railway Company, plaintiff in error here, in September, 1911, to recover special damages alleged to have been sustained by the plaintiff by reason of the railroad company's alleged negligent failure to transport certain "carrier crates" from Jacksonville to Peters Siding on the line of the company's railroad in Dade County, with reasonable dispatch. A judgment for the plaintiff in the sum of $39,180.63, including principal, interest, and costs was reversed. See Florida East Coast R. Co. v. Peters, 72 Fla. 311, 73 South. Rep. 151. Thereupon another trial was had upon issue joined upon pleas to the plaintiff's second amended declaration and a verdict was rendered for the plaintiff in the sum of $44,460, with interest from the date of the action The judgment entered upon that verdict was also reversed. See Florida East Coast R. Co. v. Peters, 77 Fla. 411, 83 South. Rep. 559.

In June, 1919, the case came on again for trial upon the issue joined between the parties, and there was a verdict for the plaintiff in the sum of $50,000.00, and interest from September 22, 1911, upon which judgment was entered.

The first verdict was for $30,000.00 damages and interest from September 22, 1911. The defendant seeks a reversal of the last judgment and assigns fifty-nine errors.

When the case came on for trial in June, 1919, the plaintiff had abandoned the first ten counts of his declaration and materially amended the last or thirty-first count by striking out certain allegations. These amendments were in fact made four or five days before the verdict was rendered upon the second trial although the thirty-first count as copied in the opinion in the case as last reported contains much of the matter which was eliminated before that trial.

The thirty-first count as it stood after the amendments, was a composite count in that it comprehended all the material allegations which were made the bases of counts numbered from eleven to thirty inclusive.

It is alleged that the plaintiff having a large tomato crop made provision for shipping the tomatoes as they became ready in the field for picking, packing and shipment by ordering seventy-five thousand "carrier crates" to be prepared for him in Jacksonville and to be shipped over the defendant's railroad in accordance with shipping directions to be given by the plaintiff. According to the declaration after it was amended by eliminating the first ten counts and striking out many of the allegations of the thirty-first count, the plaintiff ordered shipped only fifty thousand "carrier crates." The crates were shipped so it is alleged in car lots of twenty-five hundred crates to each car. On March 16th, he ordered three cars shipped, on the seventeenth two cars, on the eighteenth one car and every day thereafter to and including the 27th, two cars, except on the 19th and 26th when no cars

were ordered, the plaintiff had on hand enough carrier crates in which to pack and ship early shipments of tomatoes which might become ripe and ready for shipment before the carrier crates ordered from Jacksonville should arrive if transported by the defendant with reasonable speed and diligence.

It is alleged that the defendant had knowledge that when tomatoes become ripe and ready for packing and shipping, that they must be packed and shipped *immediately* to prevent them from becoming overripe and thus reaching the market in a deteriorated and unmarketable condition; that the plaintiff would during the busy season require a large number of "carrier crates" to-wit: five or six thousand each day in which to pack tomatoes which ripened and became ready for shipment; that the defendant had notice that the carrier crates which were offered to it for transportation consigned to plaintiff were to be used for the purpose of packing and shipping tomatoes grown on plaintiff's farm near Peters Station; that a failure to deliver them promptly would result in the loss of a large number of tomatoes. That the busy season for shipping tomatoes extended from about the middle of March to about the middle of April.

The thirty-first count also alleges that the defendant had notice that the plaintiff had employed a large force of workmen and teams to pack and ship the tomatoes and that this force of men and teams would be idle and become very expensive to plaintiff to maintain if the crates were not delivered promptly. This allegation, however, is not important as an element of damages as the plaintiff seeks only damages for the loss of tomatoes which became overripe and unfit for shipment while waiting for crate material which he had ordered from Jacksonville

and which the defendant after receiving for shipment negligently failed to deliver within a reasonable time. There is also an allegation to the effect that the plaintiff had applied to the defendant to increase the length of its side track at Peters Station and thus aid in expeditiously "receiving material and shipping such tomatoes as might be packed and offered for shipment;" that if crate material was not delivered promptly and the force of men and teams became disorganized and "difficult, if not impossible" to reassemble a large quantity of tomatoes would become overripe and unfit for shipment because of a lack of men and teams to handle the tomatoes as they became ripe, even though material might after such disorganization arrive in sufficient quantity. It is also alleged that tomato vines are of such nature that their vitality and productiveness become very much impaired if tomatoes are not picked therefrom as soon as they become ripe and such injury is shown not only in a reduction of the quantity but also size and quality of the vine's fruit.

These allegations as to the number of men and teams employed and the likelihood of a disorganization of working force and the nature of the tomato vine and its deterioration under certain conditions and the necessity for ample facilities for speedy shipment, may not be considered as an element of damages, because damages from that source are not alleged to have occurred nor are damages claimed on that account, but they did serve to inform the defendant of the precarious, uncertain, doubtful and extremely exacting nature of the business in which the plaintiff was engaged requiring on his part precise, methodical and most continuous and prudent management in every department, including ample pro-

vision for crate material and baskets both in quantity and time allowance for transportation, which of course the plaintiff well knew.

It is alleged that the defendant received in Jacksonville for transportation to the defendant the "crate material" in the quantities and upon the dates mentioned, but did not transport the material with *reasonable dispatch,* but on the contrary greatly delayed the transportation and delivery of the same, which delay in transportation and negligence on the part of the defendant was the cause of great damage and loss to the plaintiff, "to-wit, ninety-three thousand (93.000) crates of tomatoes" of the "net value to the plaintiff of, to-wit, one dollar and thirty-five cents ($1.35)" for each crate of tomatoes. It is alleged that this great quantity of tomatoes "became overripe and rotted in the field of the plaintiff because the plaintiff had no "carrier crates" in which to pack and ship the same. So it appears from the plaintiff's declaration that if there had been no complaint against the defendant about the transportation of the fifty thousand crates, the plaintiff would nevertheless have suffered the loss of forty-three thousand crates of tomatoes for the shipment of which there was no provision.

The first assignment of error rests upon the court's order in overruling the defendant's motion for a new trial, the first eight grounds of which attack the verdict as contrary to the law, the evidence and the charge of the court, and as being excessive.

The pleas interposed to the declaration were not guilty and a special plea which in substance averred that from the beginning of the tomato shipping season up to March 23 the plaintiff did not exhaust his supply of crate

material, nor did he ship to the full amount of his supply on hand up to March 23rd. That thereafter, on March 30th, the plaintiff received large quantities of crate material, which supply exceeded at all times any amount shipped on any date thereafter; that if the plaintiff suffered any damage by reason of the defendant's failure to deliver any crate material, the damage was measured by the market price of the tomatoes from March 23rd to March 29th, 1911, both inclusive, nor would it exceed for that period the amount of carrier crates ordered out from Jacksonville to be delivered between the days of such period. Issue was joined by the plaintiff upon these pleas. The questions presented by the pleadings therefore were:

1st. Was the defendant negligent in delaying the transportation of any crate material delivered to it in Jacksonville consigned to plaintiff for transportation between March 16th and 27th, both inclusive, and in respect to how many car loads of such material was it so negligent?

2nd. What is a reasonable time to be allowed for the transportation of crate material in car lots from Jacksonville to Peters' Station?

3rd. Had the plaintiff himself made reasonable provision for the shipment of the quantity of tomatoes which he claims to have lost and for which he seeks damages on any day during such period, by causing to be delivered to the defendant at Jacksonville for transportation to the plaintiff a reasonable time prior to any such day of sufficient "crate material" and providing himself with other necessary material for shipping the quantity of tomatoes claimed to have been lost on that day?

4th.  Did the plaintiff ship to the full amount of his crate material on hand up to March 23rd?

5th.  Did the defendant have notice of the conditions as alleged in the declaration and special damage that would result from negligent failure to deliver the crates?

6th.  What was the market value each day of the tomatoes in the plaintiff's field which there became overripe and unfit for shipment and were lost because of defendant's negligence in delaying the transportation of crate material

The damages which the plaintiff sought was the value of the tomatoes lost on account of defendant's alleged negligence, as measured by the market price per crate. As he only made provision for fifty thousand crates his damages of course must be confined within that limit, for it is clear that he cannot ask for damage that resulted from his own inattention to the demands of his own business.  It might even be said with propriety that it was the plaintiff's duty, knowing the precarious, uncertain, doubtful and extremely exacting nature of his business to have allowed ample time for the transportation of his crate material; that is to say prudence would seem to have required that he should have caused crates to be delivered to the railroad for transportation to him at such time as would allow a margin of at least a few hours more than a reasonable time for transportation of ordinary freight, and if delay in the transportation of the crate material was likely to be the proximate cause of disastrous consequences in the form of special damages as alleged in the declaration the plaintiff should have previously given notice to the defendant company of the special damage that would result from an unreasonable

delay in the transportation of such material unless the carrier was already in possession of such knowledge. See Florida East Coast R. Co. v. Peters, 72 Fla. 311, text 376, 377, 73 South. Rep. 151.

It was the violation of this principle in the admission of evidence and the giving of instructions on the first trial of this case that necessitated a reversal of the judgment. A principle of law which appeals alike to both reason and conscience and surely is not very difficult to comprehend.

In applying this principle to the case as it is now presented we find nothing in the record to show that the defendant had any information from the plaintiff or from any other source, previous to March 16th, that an unreasonable delay in the transportation of the crate material would result in the special damage alleged to have followed; nor do we find any evidence to justify the finding that such notice was received by the carrier prior to the receipt by it that day of the seven thousand five hundred crates that day shipped to the plaintiff. On the question of what may be considered under the circumstances a reasonable time for the transportation of such freight in car lots from Jacksonville to Peters Station a point on the line of railroad about ...... miles from Jacksonville there is possibly some evidence from which the jury might have concluded that two days was a reasonable time. The testimony of the defendant in error was that two days was about 22 hours longer than the defendant's schedule and was a reasonable time for the transportation of such material between the two points, although his experience with the defendant in such matters was that there was some variation from that limit up to as much as three days. The plaintiff should have

been guided by this experience when ordering crate material to be delivered to the railroad for transportation to him rather than to have relied upon the railroad's published schedule, thereby risking a great loss because of each carload of material delayed, because one should take every reasonable means to avert loss and prevent injury rather than shift the entire responsibility to others, but we assume nevertheless that two full days were considered by the jury to be sufficient under the circumstances for the transportation of the freight mentioned.

Allowing two days for transportation of the material, the period during which damages were recoverable extended from the nineteenth to the thirtieth of March, 1911, according to the declaration, because material shipped on the 16th should have been ready for delivery on the 19th because an arrival on the 18th would have satisfied the reasonable time allowance.

No recovery should be allowed for loss on the 19th because no notice was shown to have been given the defendant of the special conditions under which the shipment of the 16th was made prior to the issuing of the bill of lading for those cars. No recovery should be allowed for damages accruing on the 22nd because no cars were ordered out on the 19th, and no provisions made by him for packing tomatoes that day in crates handled by the defendant; for the same reason no recovery should be allowed for loss accruing on the 29th, as no cars were ordered to be shipped on the 26th and no recovery should be allowed for loss accruing on the 30th because material arrived on that date greater in quantity than was ordered on the 27th. The number of crates therefore which according to the evidence were delayed in transportation and because of which the plaintiff may recover was 37,-

500. The verdict to which the plaintiff was entitled was the sum of each day's damages accruing between the 20th and 28th, both inclusive, excluding the 22nd, provided each day's damages should be limited by the number of crates which plaintiff had provided for that day's use by ordering the shipment of material from Jacksonville a reasonable time before such date. If it is true as alleged in the plea that up to and including the 22nd of March the plaintiff did not utilize all of the crate material which he had on hand, he should not recover the full measure of loss accruing on the 20th and 21st, but such loss should be reduced so far as defendant's liability is concerned by the number of crates unused on those dates up to the number which plaintiff had shipped on the 17th and 18th, which, according to the evidence, amounted to three carloads, two ordered on the 17th and due for delivery on the 20th and one on the 18th due for delivery on the 21st. No cars, as above stated, were ordered out on the 19th, consequently no damages could be recovered for loss accruing on the 22nd.

The action is one upon the case for special damages resulting to the plaintiff because of the negligent delay in the transportation of freight in twenty separate shipments, therefore the burden was upon the plaintiff to show the special damage resulting to him from the defendant's negligence in handling each shipment, and as that damage consisted as alleged in the declaration in the spoiling of tomatoes in the field because there were no crates in which to pack the tomatoes and the picking of them would be an unnecessary expense the plaintiff should show the quantity of tomatoes which ripened and spoiled from day to day and not add one day's injury to another and estimate the total damage to be

equivalent to the number of crates which were ordered for the entire period. According to the stipulation, between counsel which was filed in evidence. the plaintiff shipped between February 25th and March 22nd inclusive by freight and express 25,040 crates of tomatoes. There is no evidence in the record to show that at the close of business on the 22nd day of March how much crate material was on hand nor how many crates of tomatoes were left unpacked for lack of material. The evidence does show, however, that on the 26th of March Mr. Britt, in company with Mr. James, Mr. McLane and Mr. Carson, at the request of the plaintiff, went over the latter's "crop of tomatoes of about four hundred acres" and made a "very careful estimate of the tomatoes in the field at the time." They made their estimate of the quantity of tomatoes that day ready for picking by selecting "an average row" in each tract and picking the tomatoes from that row and putting them in carrier crates and then estimating the number of crates of tomatoes in the tract according to the number of rows in it. This process was followed as to each tract in the entire field of four hundred acres. Adding to the quantity found in the field to be ready for shipment the tomatoes already picked and put in the warehouse there were fifty-eight thousand and forty-four crates of tomatoes. This quantity the evidence showed to be ready for shipping.

What proportion of this large quantity of tomatoes was ready for shipment four or five days earlier when the plaintiff had some crates on hand, or what proportion was actually shipped afterwards is not shown. The stipulation shows that except 101 crates there were none shipped from the 24th to the 30th inclusive. But during the period from March 19th to the 26th the plaintiff provided for only 32,500 crates if the five thousand are

counted which were shipped on the 24th and were not due for delivery before the 27th. The plaintiff merely showed that on the 26th of March there was a large quantity of tomatoes on hand which were ripe and ready for shipment and left the jury to surmise that if the crating material which he had ordered had been delivered with reasonable dispatch he could have shipped 50,000 crates of tomatoes, notwithstanding he had made provision for only 32,500 crates, and that the necessary baskets were included in this material. Mr. Britt, a witness for the plaintiff, explained that a "carrier crate consists of two heads, two slats for the bottom and two slatted sides and one solid cover for the top." That makes the crate said he and "on the inside of that crate we have six baskets and there is a division strip to go in between the top and bottom row of baskets to keep the top ones from mashing the lower ones, and then the other three baskets you sit right on top of this strip. It takes six baskets to make this crate complete. That is you have to have six carrier baskets to go in this crate." The evidence also shows that on March 26th the plaintiff was short of baskets. If the crates had been on hand they would, it seems from this evidence, have been useless without the baskets, but whether they were a part of the crate material shipped from Jacksonville is not clearly shown. The parties, however, seem to consider the baskets as part of the crate material, and we will also, although if they were not the loss to plaintiff, was not entirely due to the defendant's failure to deliver the crates within a reasonable time. How can it be said that the defendant was liable at all if the plaintiff had failed to provide himself with the necessary baskets? For, according to Mr. Britt, if the shipper had no baskets the crates would be of no service. If the baskets were necessary to a shipment of tomatoes yet formed

no part of the "carrier crates" loaded in each car at Jacksonville for shipment to the plaintiff: then the failure to deliver the carrier crates within a reasonable time was not the proximate cause of the injury, the plaintiff's own negligence in not making provision for the baskets was the contributing cause of the injury, which he sustained.

Because of these insufficiencies in the evidence the jury could not have arrived at the conclusion they reached solely upon the evidence before them. There were necessary elements in the case lacking in the proof and it is the duty of this Court to reverse or modify the judgment.

The measure of damages in this case is discussed in the second opinion, 77 Fla. 411, 83 South. Rep. 559, where the method of arriving at the value of the tomatoes alleged to have been lost is clearly pointed out by Mr. Justice Whitfield.

The refusal of the court to give the charge requested by the defendant and lettered "C" is not available as a ground for an assignment of error because no exception was taken to the refusal at the time; besides the point presented by such requested instruction was covered in other charges which the court gave.

Under the first and fifty-eighth assignments of error counsel for plaintiff in error contend that as the evidence showed that the plaintiff had on hand on certain days during the shipping season supplies of unused crate material he could not recover damages resulting from a failure to use such material because of a lack of cars in which to ship the tomatoes.

Plaintiff's counsel in examining the plaintiff as a witness in his own behalf did bring out the fact that between the 15th and 23rd of March the plaintiff had packed

crates of tomatoes in his packing house which he was compelled to carry over night from time to time because he could not get cars in which to load them and was compelled to ship them in any kind of cars he could get, but all the crates that arrived between the 16th and 26th of March were packed and shipped out with tomatoes.

It does not appear therefore that any damages were claimed on account of injury to the tomatoes because of the necessity of keeping them in the packing house for lack of cars. The plaintiff offered evidence to show that on March 26th he had on hand fifty-eight thousand and forty-four crates of tomatoes in the field and packing house which it is claimed were ruined for lack of "carrier crates" in which to ship them. Mr. Britt, however, said that some of them were in carrier crates with *three* baskets in the bottom and "not in the top" by which is probably meant that the "carrier crates" on hand were only partially packed. He also said there were not enough baskets to make a good crate.

The plaintiff also testified that he lost tomatoes between the 16th and 26th of March which became overripe in the field and that the 5,000 or 7,500 crates of tomatoes in the packing house rotted during "those ten days." The former he said were not included in the estimate made on March 26th. Now as the plaintiff had made provision according to his declaration for 40,000 crates to be delivered to him by defendant up to March 26th he could recover damages for as many crates of tomatoes lost by becoming over-ripe as he had made *complete* provision for shipping, and if any portion of those tomatoes could have been safely carried over until the 27th, 28th and 29th, he could recover damages for their loss because of failure to deliver within reasonable time the "crates" ordered out

on the 25th and 27th, assuming that the latter shipment was due on the 29th early enough in the day to use the crates. Such proof would undoubtedly have completed his case so far as the defendant's liability on fifty thousand crates of tomatoes was concerned on which amount the jury seem to have based its verdict. But as we have undertaken to point out the evidence did not show that the defendant had notice of the special damages that might accrue from any failure on its part to deliver crates promptly before the shipment of 7,500 crates on the 16th and that as to that shipment the notice did not apply although it did to all the others; that as the shipments of the 24th, 25th and 27th aggregating 15,000 crates were not due until the 27th, 28th and 30th there could be no recovery on account of the delay in delivery of those crates unless it was shown that tomatoes on hand on the 26th could have been carried over safely to those dates, which could not be inferred as the declaration . alleged specifically that the tomatoes when ripe had to be shipped immediately to prevent rotting in the field; that as there were no crates ordered on the 26th for delivery on the 29th, tomatoes that would not have lasted beyond the 28th could not become a factor in the estimated damages on account of the failure to promptly deliver the shipment of the 27th of March, and that there was no evidence to show that "crate material" referred to in the stipulation and bills of lading included baskets, six to each crate. In that state of the evidence the jury could not reasonably have concluded that the damage sustained was any amount whatever the value of a crate of tomatoes might have been. And if "crate material" includes baskets so that the defendant received for transportation to plaintiff 1,500 baskets with each car of crate material the verdict could not have been for $50,000.00 even if the value of the

tomatoes lost in the field and packing house was shown to be one dolar per crate.

But as the parties seemed to agree that "baskets" used in shipping tomatoes were included in the "crate material" received by the defendant for transportation we will so regard the evidence and order the entering by plaintiff of a remittitur within ten days of $22,500.00 and interest to be calculated on that amount from September 22, 1911; otherwise the judgment stands reversed.

TAYLOR, WHITFIELD AND WEST, J. J., concur.

BROWNE, C. J., not participating.